UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/23/2020

United States of America,

–v–

Anthony Rodriguez,

            Defendant.

16-cr-07 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Anthony Rodriguez moves for compassionate release pursuant to 18 U.S.C. § 3582(c). The Court concludes that the despite the extraordinary circumstances of the COVID-19 pandemic, the sentencing factors in 18 U.S.C. § 3553(a) do not favor a reduction in Mr. Rodriguez's sentence. The Court thus denies his motion.

**I.    Background**

    **A.    Underlying Offenses and Incarceration**

    Mr. Rodriguez pled guilty to two counts of possession of ammunition by a felon, 18 U.S.C. § 922(g)(1), in connection with two shooting incidents in the Bronx. *See* Change of Plea Transcript, Dkt. No. 24, at 18. In the first of these incidents, video of the shooting's aftermath showed Mr. Rodriguez running down a crowded block with a large-caliber firearm as bystanders—including children—fled in front of him. *See id.*; Presentence Investigative Report, Dkt. No. 27, ¶¶ 12–13; Sentencing Transcript, Dkt. No. 36, at 19–20, 27. Police recovered bullets and shell casings from the scene and bullet fragments lodged in a nearby vehicle. PSR ¶ 13; Sentencing Tr. at 19–20. Over a year later, in October 2015, Mr. Rodriguez fired several shots into a moving vehicle at short range with the apparent intent to kill the occupants. PSR

¶¶ 7–9; Sentencing Tr. at 20, 28.  Video surveillance captured that shooting, too.  PSR ¶ 7.  Mr. Rodriguez had a prior state-court conviction for felony attempted criminal possession of a weapon.  Plea Tr. at 18; PSR ¶¶ 11, 40.

The Court found that Mr. Rodriguez acted with malice aforethought, premeditation, and a specific intent to kill the occupants of the vehicle in the 2015 shooting.  *See* Sentencing Tr. at 14–18.  Thus, the Court determined that Mr. Rodriguez possessed ammunition in connection with the commission of attempted first degree murder and applied the base offense level for that offense in its calculation of the guideline range.  *See id.*; PSR ¶¶ 19; *see also* U.S.S.G. § 2K2.1(c)(1)(A).  Noting the "exceptional level of danger and malice" of Mr. Rodriguez's conduct, the Court sentenced Mr. Rodriguez to 108 months' imprisonment, a sentence within the guideline range and one year short of the statutory maximum.  Sentencing Tr. at 28–31.  In a separate case before Judge Failla, Mr. Rodriguez received a sentence of 60 months' imprisonment for his role in a narcotics conspiracy, with 12 months of the sentence to be served consecutively to the sentence on the firearms convictions.  *See United States v. Anthony Rodriguez*, No. 17-cr-449 (KPF), Dkt. No. 440.

Mr. Rodriguez is currently incarcerated at FCI Fort Dix with a projected release date in June 2024.  Rodriguez Br., Dkt. No. 60, at 1.  He is 29 years old and has no medical conditions recognized as increasing the risk of severe illness from COVID-19; however, he is slightly overweight, which the CDC recognizes might be a risk factor.  Gov. Br., Dkt. No. 59, at 6.  Mr. Rodriguez tested positive for the novel coronavirus on October 29, 2020, and experienced symptoms including migraines, body aches, loss of taste and smell, diarrhea, difficulty breathing, and fatigue.  Rodriguez Br. at 13.  He has since tested negative twice, although he continues to

report feelings of shortness of breath and headaches. Gov. Reply, Dkt. No. 62, at 1–2.

### B.  Procedural History

On April 7, 2020, Mr. Rodriguez submitted an administrative request entitled "Petition for Compassionate Release Under 18 U.S.C. § 4205(g) and the CARE Act, H.R. 748" to the warden at FCI Fort Dix. *See* Gov. Br., Ex. B. The administrative request cited numerous statutory provisions including the First Step Act of 2018 and requested release because of the risk of contracting COVID-19 while incarcerated. The record does not reflect that the warden ever acted on the request.

On November 11, 2020, the Court received a pro se motion for compassionate release for Mr. Rodriguez dated November 5, 2020, and directed the Government to respond. *See* Dkt. No. 55. The Court subsequently appointed counsel for Mr. Rodriguez, who filed a supplemental submission in support of the motion on December 5, 2020. *See* Dkt. No. 60. The Government opposes the motion. *See* Dkt. Nos. 59, 62.

## II.  Discussion

The compassionate release statute provides a limited exception to the rule that "[f]ederal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed.'" *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The First Step Act of 2018, 132 Stat. 5194, 5239, authorizes a defendant serving their

sentence to move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020). "Chief among the[] changes [made by the First Step Act] was the removal of the BOP as the sole arbiter of compassionate release motions." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). The First Step Act grants district courts "broad" discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237.

The Government contested exhaustion in its opposition to Mr. Rodriguez's pro se motion. *See* Gov. Br. at 4–5. The Government does not address this issue in its reply brief. *See* Gov. Reply at 1-2. In its view, Mr. Rodriguez's administrative request sought only home confinement under the CARES Act, and not compassionate release. The Court disagrees. Mr. Rodriguez's administrative request references both the CARES Act and the First Step Act and repeatedly references "compassionate release." *See* Gov. Br., Ex. B. It requests not only home confinement, but also a "Modification of Sentence"—that is, the remedy contemplated by 18 U.S.C. § 3582(c). *Id.* The Court rejects the view that a pro se prisoner must invoke this statutory provision with legal precision in order to make a "request" for compassionate release to the warden within the meaning of § 3582(c)(1)(A). Mr. Rodriguez's administrative request plainly seeks compassionate release in addition to other remedies. Because more than thirty days lapsed between the date of his request and his motion for compassionate release, the exhaustion requirement is satisfied. *See* § 3582(c)(1)(A).

To grant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and find that "extraordinary and compelling reasons warrant" a reduction in sentence and that release would be consistent with any applicable policy statements issued by the Sentencing Commission. Although the Court finds that Mr. Rodriguez has demonstrated extraordinary and compelling circumstances, it concludes that the § 3553(a) factors do not favor a reduction in sentence.

The Court begins by considering whether "extraordinary and compelling reasons warrant such a reduction [in sentence] . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In *Brooker*, the Second Circuit held that the current version of U.S.S.G. § 1B1.13 does not apply to compassionate release motions other than those made on behalf of a prisoner by the BOP. *See Brooker*, 976 F.3d at 235–36. As a result, "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion" in deciding a compassionate release motion brought directly by a prisoner. *Id.* at 237. The Court therefore looks to § 1B1.13 for guidance in the exercise of its discretion, but is free to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* Section 1B1.13, outlines several circumstances that constitute "extraordinary and compelling reasons" supporting a sentence reduction, including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The policy statement deems a prisoner's circumstances

extraordinary and compelling only if the prisoner does not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As this Court has explained, the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals. *See, e.g.*, *United States v. Williams-Bethea*, No. 18-cr-78 (AJN), 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020); *Scparta*, 2020 WL 1910481, at *9; *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *accord United States v. Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic. Those detained in jails and prisons face particularly grave danger."). This Court has previously found that even where a facility has not yet reported any confirmed COVID-19 cases, carceral conditions pose unique risks to vulnerable inmates because of the potential for the rapid introduction and spread of the disease. *See Williams-Bethea*, 2020 WL 2848098, at *5.

Courts in this district have split on whether the COVID-19 pandemic may constitute an extraordinary and compelling reason supporting compassionate release for an inmate who has already tested positive for, and then recovered from, the novel coronavirus. *See United States v. Graham*, No. 16-cr-786 (NSR), 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020). In a number of cases, courts have concluded that the risk of re-infection is too speculative or remote to justify compassionate release. *See, e.g.*, *United States v. Davis*, No. 12-cr-712 (SHS), 2020 WL 3790562, at *2–3 (S.D.N.Y. July 7, 2020); *United States v. Decker*, No. 17-cr-0738 (LAK), 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020); *United States v. Delorbe-Luna*, No. 18-CR-384 (VEC), 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020). In others, courts have held that

both the risk of re-infection and the possibility of severe symptoms manifesting after apparent recovery may justify a reduction in sentence. *See, e.g.*, *United States v. Barajas*, No. 18-cr-736 (NSR), 2020 WL 3976991, at *10–11 (S.D.N.Y. July 13, 2020); *Graham*, 2020 WL 5604050, at *3.

The current situation at FCI Fort Dix is particularly concerning. Conditions at the facility appear to present serious risks both of spread of the virus and of inadequate medical care for those who have been infected. The Government does not dispute Mr. Rodriguez's account that inmates have been provided only a single disposable surgical mask since the beginning of the pandemic. *See* Rodriguez Br. at 13. Nor does it dispute his claim that correctional officers often flout masking requirements, or that following his positive test result Mr. Rodriguez was offered no more medical care than Tylenol and bed rest. *See id.* at 13–14. Hundreds of inmates at the facility have tested positive within the past two months. The COVID-19 outbreak at FCI Fort Dix has also had serious effects on inmates' wellbeing apart from medical risks. The facility has prohibited all visitation and greatly restricted inmate movement. Declaration of Dr. Kimberly Kodger, Gov Br., Ex. A ¶ 19. Considering these factors, the Court joins those others that have held that the current COVID-19 situation in FCI Fort Dix may qualify as an extraordinary and compelling circumstance supporting compassionate release, even for an inmate who has already apparently recovered from COVID-19. *See, e.g.*, *United States v. Geraldo Vega*, No. 89-cr-0229 (JS), 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020).

The Court's analysis, however, does not end there. The compassionate release statute requires the Court to consider the factors set forth in 18 U.S.C. § 3553(a). Upon consideration of those factors, it concludes that a reduction in sentence is unwarranted.

Because this Court sentenced Mr. Rodriguez, the Court is intimately familiar with how these factors apply to his circumstances. Mr. Rodriguez's conduct was exceptionally dangerous, putting innocent bystanders and his intended victims "in grave, grave danger." Sentencing Tr. at 27. The two shooting incidents he was involved in took place over a year apart and after a prior conviction for a firearms offense. *Id.* at 28. They thus appear not to reflect a momentary lapse of judgment, but rather a pattern of serious criminal conduct. The Court also considers that Mr. Rodriguez subsequently pled guilty to involvement in a narcotics conspiracy before Judge Failla.

The sentence the Court imposed was the minimum necessary required to effectuate the purposes of sentencing at the time, and it remains sufficient but no greater than necessary to achieve those purposes today. A substantial sentence is necessary to reflect the seriousness of the offense and to deter like conduct by others. The Court also has concerns that Mr. Rodriguez, were he released today, may continue to pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The term of imprisonment Mr. Rodriguez served in connection with his state-court conviction was evidently insufficient to deter additional firearms offenses.

The Court takes into account the effect of the COVID-19 pandemic on the balance of the § 3553(a) factors. The pandemic has imposed serious health risks and other burdens on incarcerated persons. However, though they do not obviate the extraordinary and compelling circumstances of the pandemic altogether, that Mr. Rodriguez has already apparently recovered from COVID-19 and has few risk factors for severe illness means that the risks of continued incarceration are lesser for him than for many other inmates.

Mr. Rodriguez has served only about half his sentence for multiple acts that gravely

8

imperiled members of the public. Despite the concerning situation at FCI Fort Dix, his risk of severe illness as a result of future COVID-19 exposure is relatively low. On balance, after considering the factors set forth in 18 U.S.C. § 3553(a), the Court declines to exercise its discretion to reduce his sentence.

## III.     Conclusion

For the foregoing reasons, the Court DENIES Mr. Rodriguez's motion for compassionate release (Dkt. No. 55).

SO ORDERED.

Dated: December 23, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge